the Crown Library to waive any claim to it. It is further claimed on their behalf that, if it cannot be definitely determined that the Crown Library is the institution which was in the testator's mind, then the language of the will is so ambiguous that it is impossble to tell which of the two libraries was to be benefited, and, therefore, the bequest should be declared void for uncertainty.

Hence the main question for determination is as to which institution the testator had in mind in referring to the "Public Library of Phelps." In its consideration, we must recognize the principle that it is the duty of the court to carry out the intention of the deceased, and that the bequest will not be declared void on the ground of uncertainty, unless the conditions are such as to make it impossible to ascertain, with any degree of reasonable certainty, what was his intention. It appears from the evidence that, although the testator was born in Phelps, and always maintained an active interest in the place of his birth, he had not lived there for many years. It is but natural, in consequence, that in making a bequest for the "Public Library" he should have had in view the library which was in existence when he lived in the town, rather than some institution which was incorporated in later years, about which he knew nothing. Again, it is shown that the library attached to the school has not borne any definite or particular name, but has been referred to as "the library," or "the school library," or "the public library," and it is but natural, too, that the testator should believe that the words "public library," even if not the corporate name of the institution, would be sufficiently descriptive to indicate to any person the library which he had in mind. On the other hand, the title of the "Crown Library Association" is such that, while the exact title as contained in the certificate of incorporation might not have been used, yet similar words would have been used which would have left no one in doubt as to the testator's meaning. While the phrasing of the bequest is not so definite as might be desired, yet it seems to be plain that the library of the school was the one which the testator intended to benefit.

The will also contained a bequest to the Eastern District Industrial School Association of the sum of $3,000. This institution is conceded by the various parties to have been incorporated under one of the amendatory acts of the statute of 1848, and in consequence the bequest is invalid.

Let decree be entered settling the accounts as herein indicated.

---

(56 Misc. Rep. 96.)

### In re PHILLIPS' ESTATE.

(Surrogate's Court, Cattaraugus County. September, 1907.)

1. WILLS—CONSTRUCTION—JURISDICTION.

    A surrogate has jurisdiction to construe the provisions of a will relating to both real and personal property when necessary to the judicial settlement of an executor's account and to distribution.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 1676.]

**2. SAME—VESTING OF ESTATE.**

Testator devised all the residue of his estate to certain residuary devisees and legatees, his sons and daughters, all adults, their heirs and assigns, subject to the condition that the property should not be divided by them within five years after his decease, but should remain during that time under the control of the executor, and that if any of his sons or daughters should die within the five years, leaving no child or children, his share should belong to his surviving brothers and sisters and their heirs, but that nothing should abridge the rights of his wife previously given unless she forfeited the same by marrying again, in which case certain bequests should cease and the property given should pass to his executor and belong to his sons and daughters subject to the same conditions, the rights and interests of such sons and daughters when apportioned, to be subject to the rights of testator's wife as fixed by the will. *Held*, that the title vested in each of the legatees and devisees named, on the probate of the will, subject to be divested on his or her death, pending the five-year period when such share would go to the surviving brothers and sisters.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 1485.]

**3. SAME—VALIDITY OF PROVISIONS.**

A provision in a will that the title of any devisee who might die within five years, during which time the estate was to remain under the control of the executor, should be divested, was not invalid, but in so far as it provided that the estate which vested in a child of a deceased child who might die within the five years should remain in the control of the executor it was invalid as an unlawful suspension of the power of alienation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 1515; vol. 39, Perpetuities, § 45.]

**4. SAME—INVALID PROVISIONS—EFFECT.**

Where a will provided that the estate should remain in the hands of the executor for five years, and that on the death of any legatee during that time his portion should descend to his children subject to the same condition, the latter invalid portion of the will would be eliminated and the valid portion preserved to effectuate the general testamentary scheme.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 992–994.]

**5. SAME.**

Where a will provided that the residuary estate should be divided among testator's children and remain in the control of the executor for five years, and on the death of any child within that time, leaving no issue, his estate should pass to his surviving brothers and sisters, the interest of a son who died after the probate of the will, and within the five-year period, leaving no issue, passed to such surviving brothers and sisters.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 1171, 1172.]

**6. PERPETUITIES—ACCUMULATIONS.**

A will, by its terms, prohibited the division of any portion of the estate for five years, leaving the management in the hands of the executor. *Held*, that without any direction for payments of any annuities during that time that the direction for the accumulation of the income, of the estate during that time was invalid under Real Property Law (Laws 1896, p. 568, c. 547) § 51, and under Personal Property Law (Laws 1897, p. 508, c. 417) § 4.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, § 69.]

**7. WILLS—CHARGE ON REALTY.**

Where by the terms of a will an annuity to the widow became an express charge on the realty, the share of each devisee in the real estate was subject to the payment of a proportionate part of the annuity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 2117.]

In the matter of the judicial settlement of the estate of Isaac H. Phillips, deceased. Decree rendered.

Frank L. Crane and Richard C. Hall, for executor.

James E. Bixby, for administrators of estate of Verne Phillips, deceased.

DAVIE, S. In the account filed for judicial settlement the executor charges himself with balance remaining on hand as established by decree on intermediate accounting April 11, 1903, and with "increase" to the amount of $3,768.48, making total charges the sum of $3,854.90; he credits himself with inventoried effects undisposed of, funeral expenses, annuity to the widow, moneys distributed to legatees, and expenses of managing the estate, amounting in all to $2,-257.11, leaving a balance for distribution, subject to commissions and expenses of this accounting of $1,597.79. The "increase" with which the executor charges himself consists, largely, of income derived from the real estate. The expenses with which he credits himself were chiefly incurred in the management of the real estate and the production of such income. Construction of certain portions of the will is necessary to determine the rights of the various legatees in the balance remaining for distribution; and no question is raised as to the jurisdiction of the Surrogate's Court to construe, upon this accounting, the provisions of the will, although they relate to both real and personal estate. It is assumed by all the interested parties that construction is absolutely necessary as an incident to judicial settlement and distribution.

The will bears date April 1, 1899, was admitted to probate March 11, 1902, and names Isaac H. Phillips, a son of the testator, as sole executor thereof. Verne Phillips, another son, died intestate August 6, 1904, leaving no issue, and letters of administration upon his estate were thereafter granted to Nellie, his widow, and Frank Phillips, a brother. The contest relates, principally, to the interests of the estate of Verne Phillips, deceased, under the provisions of the residuary clause of the will.

By the first item of his will the testator gives his household effects to his widow, absolutely. By the second item he gives her the use, income and profits of the house and lot, occupied by him as a home, during the term of her natural life, subject, however, to the restrictions hereinafter set forth. The third item is as follows:

"I give and bequeath to my said wife the sum of one hundred dollars per year for and during the term of her natural life, and the same is made a charge and lien upon my real property and estate, and my executor hereinafter named shall from time to time pay the same to her as she may call for and need the same, but this bequest to her and the bequest to her of the use of the land where we now reside shall cease and terminate if she shall again remarry after my decease and the bequests and devises herein made to her are in lieu of dower."

The fourth item of the will is as follows:

"I give and bequeath and devise all the rest, residue and remainder of my property and estate, both real and personal that I may have, hold and own

at my decease including the real property, the use of which is devised to my wife, as follows:

"To my son, Isaac H. Phillips one-seventh part of the same; to my son Emmet Phillips one-seventh part of the same; to my son Verne Phillips one-seventh part of the same; to my daughter, Olive Phillips, one-seventh part of the same; to my daughter, Elizabeth Fuller, one-seventh part of the same and to my daughter-in-law, Lottie Phillips, the wife of my son Frank Phillips, one-seventh part of the same; and the same is given to them and to each of them and their heirs and assigns forever,. subject however, to the following terms and conditions:

"That said estate and property shall not be divided in any way by the owners thereof within five years after my decease but shall during that period remain under the control and management of my executor hereinafter named, and if any of my sons or daughters, before named shall be deceased within said five years leaving no child or children, then the share of such one as shall be deceased, shall belong to their surviving brothers and sisters, their heirs and assigns forever.

"Nothing herein contained shall abridge the rights of my said wife, hereinbefore given to her unless she shall forfeit the same by marrying again after my decease, in which case the bequests to her in the second and third items of this will shall cease and be of no effect and the property herein given shall thereafter pass into the hands of my executor and belong to the seven persons, named hereinbefore, subject to the same conditions as the other bequests made to them.

"Their rights and interests in my real estate, shall be when divided and apportioned to them, subject to the rights of my said wife, as herein fixed and defined."

It is not difficult to ascertain the intention of the testator. It is apparent that he designed that the title to his residuary estate should vest in the legatees and devisees named immediately upon his death and probate of the will. Such intention is evidenced by the fact that the disposing clause under consideration contains words of present gift, and in the latter explanatory clause the testator designates such legatees as the owners of the estate. The phraseology is "that said estate and property shall not be divided in any way by the owners thereof within five years after my decease." He further intended that the title of the individual legatees should not be absolute for five years immediately following his death, but, during that time, should remain subject to be divested by the death of such legatee during that period; that if such legatee, so dying, left a child or children, his or her share should pass to such issue; dying without issue, such share should go to the surviving brothers and sisters Now, is this entire provision valid, and can the intention of the testator be effectuated? Is any portion of it invalid? If so, can the valid portions be preserved and the invalid parts eliminated? It is a fundamental proposition in testamentary construction that:

"If, in any particular contingency, the power of alienation is so suspended that it may possibly exceed the limits prescribed by law, the estate granted on that particular contingency is void; but this defect which would affect the statute only if the contingency occurred can have no effect if the contingency does not occur. Then that unlawful estate is not attempted. Accordingly, the good alternative estate is sustained notwithstanding the defect which would have been in the other, if the course of events had created it." Chapl. Susp. Alien. 275.

The limitation upon the vesting of the absolute fee, to the effect that the title of any of the devisees who might die within five years should be divested, creates no invalidity. Mead v. Maben, 131 N.

Y. 256, 30 N. E. 98; Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481; Buel v. Southwick, 70 N. Y. 584. The attempted provision on behalf of the child or children of either of the devisees who might die during the five years is invalid, being in contravention of the statute against unlawful suspension of the power of alienation. To illustrate—assume that Verne Phillips, after the probate of the will, had joined with all the other devisees in conveying the real estate; he then dies during the five-year period leaving a child; the title of the grantee is defective because such child has succeeded to his father's interest; so that, under this provision of the will, if effect is to be given to it, the power of alienation is absolutely suspended for a period of five years, because, during that period, it could not be ascertained who would have the right to convey. Such five years might exceed the legal limitation of two lives in being and is therefore void under the statute. Craig v. Hone, 2 Edw. Ch. 557. This invalid portion may and should be eliminated in order to effectuate the testator's intention as far as possible. The law is well settled that, when invalid portions of a will may be eliminated so as to save intact the valid portions and still preserve the general testamentary scheme, construction to that effect should be adopted. Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917; Oxley v. Lane, 35 N. Y. 340; Savage v. Burnham, 17 N. Y. 561, 572; Kane v. Gott, 24 Wend. 641, 666, 35 Am. Dec. 641; Parks v. Parks, 9 Paige, 107, 117; De Kay v. Irving, 5 Denio, 646; Lang v. Ropke, 5 Sandf. 363, 371. This, then, leads to the result that in this case the residuary clause of the will must be construed as if no reference whatever had been to the issue of any legatee who might die during the five-year period; that is, each devisee upon the probate of the will became vested with the title to a one-seventh part of the estate, such title, however, subject to be divested in case of his or her death during the period named, and such interest thereupon to go to the surviving brothers and sisters. Had Verne Phillips left a child who was now seeking to secure an interest in the estate, he would be confronted with the illegality of that portion of the will upon which his claim was based; but no such contingency has arisen. He left no issue, and the question of the rights of such issue has not and cannot hereafter arise.

Regarding the second question, that of the alleged unlawful accumulation of the income, the will by its terms prohibits the division of any portion of the estate, real or personal, during a period of five years from testator's death. It assumes to place the management and control of the entire estate during that period in the hands of the executor. The will contains no direction for payment of debts, funeral expenses, annuity, or expenses of administration. The prohibition against distribution seems equally applicable to income as to the corpus of the estate. Such direction for accumulation of income is invalid. Section 51 of the Real Property Law (Laws 1896, p. 568, c. 547), provides that all directions for the accumulation of the rents and profits of real estate, except for the benefit of one or more minors, to terminate at or before the expiration of such minority, are invalid. Section 4 of the Personal Property Law (Laws 1897, p. 508, c. 417), makes a similar provision in regard to the income from personal prop-

erty. In Kalish v. Kalish, above cited, the court held that a testamentary direction that upon the death of a life tenant the executor hold the property in trust, with the power to collect the rents, issues, and profits, and after the payment of taxes, charges, and specified annuities, invest the surplus in real estate, and that the estate should not be settled for a period of five years after the death of the life tenant, final settlement to be made as soon thereafter as in the opinion of the executor would be for its best interests, was void as contravening the statute against perpetuities and as violating the statute against unlawful accumulation of rents and income, where the beneficiaries were all of full age.

In the case at bar none of the beneficiaries were minors at the date of the execution of the will. Such prohibition against distribution of income, under the statutes and authority cited, was invalid. Each of the devisees and legatees, they having become invested with title, became entitled to the one-seventh of the income from the death of testator to the date of the death of Verne Phillips, and from that time on each of the brothers and sisters became entitled to $7/42$ of the income, in consequence of their having succeeded to the share of the deceased brother. The share of each devisee in the real estate was subject to the payment of its proportionate part of the widow's annuity as the payment thereof was by the terms of will made an express charge thereon. The payments made by the executor from the income of the real estate to the widow upon her annuity should be sustained and allowed; and, as all the interested parties have acquiesced in the management and control of the estate by the executor, the expenses incurred by him in the management thereof should also be allowed, as well as the payments made by him for funeral expenses and upon the shares of the distributees. The account should be restated in accordance with the foregoing conclusions, and the balance, after payment of commissions and expenses of accounting to be fixed by the decree herein, distributed as follows: One-seventh of the net income from death of testator to August 6, 1904, date of the death of Verne Phillips, to the administrators of his estate, $500 thereof should be retained by the executor until the further order of the court to await the termination of action now pending in which the executor as such is a party, and the balance divided equally between the six other legatees named in the residuary clause of the will. The terms of the decree will be settled, and such other evidence there taken as may be necessary in order to state the account as indicated at the surrogate's office in Salamanca October 7, 1907, at 11 a. m.

Decreed accordingly.